**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

JAHNELL PARKINSON,

                              Plaintiff,

v.                                                              1:22-cv-70 (BKS/CFH)

TOWN OF NISKAYUNA, DETECTIVE PAUL
HOBSON, PATROLMAN JACKSON ARCHAMBAULT,
DETECTIVE MARK FLORELL, FRANCIS WALL,
CITY OF SCHENECTADY, OFFICER ERIC REYELL,
BRANDAN KIETLINSKI, TOWN OF ROTTERDAM,
DETECTIVE CONNOR LEE, OFFICER SEAN
SIMMONS, COUNTY OF SCHENECTADY, DAVID P.
MARINUCCI, and JOHN R. MCFADDEN,

                              Defendants.

**Appearances:**

*Plaintiff pro se:*
Jahnell Parkinson
Schenectady, New York 12303

*For Defendants Town of Niskayuna, Paul Hobson, Jackson Archambault, Mark Florell, and Francis Wall:*
Ryan E. Manley
Conway, Donovan & Manley PLLC
50 State Street, 2nd Floor
Albany, New York 12207

*For Defendants City of Schenectady and Brandan Kietlinski:*
Hannah H. Hage
Gregg T. Johnson
Johnson & Laws LLC
646 Plank Road, Suite 205
Clifton Park, New York 12065

*For Defendants Town of Rotterdam, Connor Lee, and Sean Simmons:*
Ryan P. Bailey
Bailey, Johnson & Peck, P.C.
5 Pine West Plaza, Suite 507
Washington Avenue Extension
Albany, New York 12205

*For Defendant John R. McFadden:*
Jonathan M. Bernstein
Goldberg Segalla, LLP
8 Southwoods Boulevard, Suite 300
Albany, New York 12211

**Hon. Brenda K. Sannes, Chief United States District Judge:**

**MEMORANDUM-DECISION AND ORDER**

## I.   INTRODUCTION

On January 26, 2022, Plaintiff pro se Jahnell Parkinson initiated this action by filing a

complaint that asserted claims under 42 U.S.C § 1983 for (1) denial of access to the courts;

(2) deprivation of property without due process of law; (3) denial of due process and equal

protection of the law; (4) municipal liability for deliberate indifference; and (5) conspiracy

against eleven defendants: (1) the Town of Niskayuna Police Department; (2) Paul Hobson;

(3) Jackson Archambault; (4) Mark Florell; (5) Francis Wall; (6) the City of Schenectady Police

Department; (7) Eric Reyell; (8) Brian Kietlinski; (9) the Town of Rotterdam Police Department;

(10) Connor Lee; and (11) Sean Simmons. (Dkt. No. 1, ¶¶ 9–21, 50–78.) All of the defendants,

except Eric Reyell, who has not yet appeared in this action moved to dismiss pursuant to Federal

Rule of Civil Procedure 12(b)(6). (Dkt. Nos. 8, 22, 25.)[1] On January 9, 2023, the Court granted

the motions and dismissed Plaintiff's complaint with leave to amend. *See Parkinson v. Town of*

---

[1] Defendants City of Schenectady Police Department and Brandan Kietlinski state that Eric Reyell has not been employed by the Schenectady Police Department since 2015, (Dkt. No. 48-1, at 6 n.1), well before the events alleged in the amended complaint. Defendant Reyell has not appeared in this action, and Plaintiff has not filed a proof of service as to any Defendant. Plaintiff is directed to file proof of service as to Defendant Reyell, and the other Defendants who have not appeared in this action—the County of Schenectady and David Marinucci—by December 26, 2023. *See* Fed. R. Civ. P. 4(m) (providing for dismissal of a complaint "[i]f a defendant is not served within 90 days after the complaint is filed").

*Niskayuna Police Dep't*, No. 22-cv-70, 2023 WL 131023, at *8, 2023 U.S. Dist. LEXIS 3067, at *21 (N.D.N.Y. Jan. 9, 2023).

On April 6, 2023, Plaintiff filed the operative amended complaint in which he asserts claims against fourteen defendants: (1) the Town of Niskayuna; (2) Paul Hobson; (3) Jackson Archambault; (4) Mark Florell; (5) Francis Wall; (6) the City of Schenectady; (7) Eric Reyell; (8) Brandan Kietlinski; (9) the Town of Rotterdam; (10) Connor Lee; (11) Sean Simmons; (12) the County of Schenectady; (13) David P. Marinucci; and (14) John R. McFadden. (Dkt. No. 36, ¶¶ 10–23.) Plaintiff asserts claims under 42 U.S.C § 1983 for (1) denial of access to the courts; (2) deprivation of property without due process of law; (3) denial of due process and equal protection of the law; (4) municipal liability for deliberate indifference; (5) conspiracy; (6) "conspiracy to convict"; (7) violation of the right to counsel; (8) denial of Fourth and Fourteenth Amendment rights; (9) denial of Fifth and Fourteenth Amendment rights; and (10) denial of Sixth and Fourteenth Amendment rights. (Dkt. No. 36, ¶¶ 64–107.)

Presently before the Court are motions to dismiss under Rule 12(b)(6) of the Federal Rule of Civil Procedure by: (1) Defendants Town of Niskayuna, Hobson, Archambault, Florell, and Wall ("Niskayuna Defendants"), (Dkt. No. 47); (2) Defendants City of Schenectady and Kietlinski ("City of Schenectady Defendants"), (Dkt. No. 48); (3) Defendants Town of Rotterdam, Lee, and Simmons ("Rotterdam Defendants"), (Dkt. No. 50); and (4) Defendant McFadden, (Dkt. No. 52). Plaintiff opposes each of these motions. (Dkt. No. 67.)[2] Defendant McFadden, City of Schenectady Defendants, and Rotterdam Defendants filed replies in further

---

[2] In light of Plaintiff's delay in responding to the motions to dismiss, City of Schenectady Defendants and Rotterdam Defendants requested that their motions be considered unopposed. (Dkt. Nos. 61, 62.) However, upon request from Plaintiff, (Dkt. No. 63), and given his pro se status, the Court extended the time for Plaintiff to respond to the motions to dismiss. (Dkt. No. 65.) Plaintiff filed his opposition on September 5, 2023. (Dkt. No. 67.) Accordingly, the Court denies City of Schenectady Defendants' and Rotterdam Defendants' requests to consider their motions unopposed.

support of their motions. (Dkt. Nos. 68, 69, 71.) For the following reasons, the Court grants the

motions filed by City of Schenectady Defendants and Defendant McFadden and grants in part

and denies in part the remaining motions to dismiss.

## II.   FACTS[3]

On or about May 23, 2019, Plaintiff alleges he was pulled over in his vehicle by

Defendants Reyell, Lee, and Simmons in the Town of Rotterdam, "taken out of his vehicle,

handcuffed, searched[,] and placed in the back of an unmarked vehicle." (Dkt. No. 36, ¶¶ 35,

37.) Plaintiff "did not know the nature of the stop" but knew "that he was legally driving his

vehicle and not committing any crimes or in the process of such." (*Id.* ¶ 36.) Afterward,

Defendant Lee said to Plaintiff: "[Y]ou messed up . . . . [Y]ou shouldn't have never [sic] tried to

get a relative of a police officer arrested!" (*Id.* ¶ 37.) Plaintiff was taken to "the stationhouse" by

a different car where Defendant Simmons conducted a strip search and an inventory search. *(Id.*

¶ 38.) While there, Defendant Simmons told Plaintiff that officers were at his residence with a

search warrant and that if Plaintiff did not give Defendant Simmons a combination code to enter

Plaintiff's residence, officers would "break open the door, causin[g] excessive damage to

[Plaintiff's] home." (*Id.* ¶ 39.) Plaintiff gave officers access to the residence before learning that

there was no valid search warrant. *(Id.* ¶ 40.)

Defendants Town of Niskayuna and Town of Rotterdam and its officers, "acting in

concert" with Defendants Reyell, Florell, and Lee, seized property from Plaintiff's residence,

including money, iPhones, watches, and cars. (*Id.* ¶ 41.) Plaintiff alleges that no drugs or

---

[3] These facts are drawn from the amended complaint. (Dkt. No. 36.) The allegations in the amended complaint are largely repetitive of the allegations in the original complaint. (Dkt. No. 1.) The Court assumes familiarity with those allegations and has only included what is relevant to the instant motions. The Court assumes the truth of, and draws reasonable inferences from, the well-pleaded factual allegations, *see Lynch v. City of New York*, 952 F.3d 67, 74–75 (2d Cir. 2020), but does not accept as true the legal conclusions, *see Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

paraphernalia were found there. (*Id.*) Plaintiff was arrested on drug charges, "his property was confiscated[,] and his bank accounts were frozen" by Defendants Town of Rotterdam, Town of Niskayuna, Florell, Lee, and Simmons "acting in conspiracy with" Defendants Hobson, Archambault, and Wall. (*Id.* ¶ 42.) Plaintiff's bail was set at $100,000, which Plaintiff alleges was "excessive in light of two minor drug sales." (*Id.* ¶ 43.) A judge ordered that Plaintiff's bank account be released and that Defendants return one of Plaintiff's vehicles. (*Id.* ¶ 48.)

Plaintiff was indicted by a grand jury and his case was scheduled for trial. (*Id.* ¶ 44.) Plaintiff hired Defendant Marinucci and, later, Defendant McFadden to represent him, but Plaintiff alleges that these Defendants "were compromised and in collusion with the prosecution." (*Id.* ¶ 45.) Without specifying which attorney is the subject of his claims, Plaintiff alleges that "he"[4] "failed to effectively challenge the legality of the stop frisk and the search of the plaintiff or his apartment[;] . . . the arrest warrant[;] or the probable cause for the stop and search of the plaintiff." (*Id.* ¶ 47.) "He" "proceeded to trial without any discovery or witness[] statements and knew that the indictment was fraudulent . . . [but] never requested the necessary hearings specified for the evidence presented in the case." (*Id.*) "He" "failed to investigate or object to the evidence and went to trial unprepared . . . [and] coerced the plaintiff to plead guilty in the middle of trial." (*Id.*) Plaintiff pleaded guilty during the trial and was convicted of drug charges; he served two years in state prison. (*Id.* ¶¶ 47, 90.)

---

[4] Other than the collusion allegation, (*id.* ¶ 45), Plaintiff's factual allegations against Defendants Marinucci and McFadden are contained in a single paragraph. (*Id.* ¶ 47.) Plaintiff initially alleges that "Defendant Marinucci and McFadden failed to effectively challenge the legality of the stop frisk and the search of the plaintiff or his apartment," (*id.*). But the remainder of the allegations in that paragraph refer only to a single person without specifying to which Defendant, Marinucci or McFadden, Plaintiff is referring. (*Id.*)

## III.    STANDARD OF REVIEW

### A.    Rule 12(b)(6)

To survive a motion to dismiss, "a complaint must provide 'enough facts to state a claim to relief that is plausible on its face.'" *Mayor & City Council of Balt. v. Citigroup, Inc*., 709 F.3d 129, 135 (2d Cir. 2013) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Although a complaint need not contain detailed factual allegations, it may not rest on mere labels, conclusions, or a formulaic recitation of the elements of the cause of action, and the factual allegations 'must be enough to raise a right to relief above the speculative level.'" *Lawtone-Bowles v. City of New York*, No. 16-cv-4240, 2017 WL 4250513, at *2, 2017 U.S. Dist. LEXIS 155140, at *5 (S.D.N.Y. Sept. 22, 2017) (quoting *Twombly*, 550 U.S. at 555). A court must accept as true all well-pleaded factual allegations in the complaint and draw all reasonable inferences in the plaintiff's favor. *See EEOC v. Port Auth*., 768 F.3d 247, 253 (2d Cir. 2014) (citing *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd*., 493 F.3d 87, 98 (2d Cir. 2007)). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678.

The complaint of a plaintiff proceeding pro se "must be construed liberally with 'special solicitude' and interpreted to raise the strongest claims that it suggests." *Hogan v. Fischer*, 738 F.3d 509, 515 (2d Cir. 2013) (quoting *Hill v. Curcione*, 657 F.3d 116, 122 (2d Cir. 2011)). "Nonetheless, a pro se complaint must state a plausible claim for relief." *Id.*

## IV.    ANALYSIS

### A.    Dismissal of Claims Previously Dismissed

The Court assumes familiarity with the analysis in its previous decision dismissing Plaintiff's claims of denial of access to the courts, deprivation of property without due process of law, and denial of due process and equal protection of the law. *See Parkinson*, 2023 WL 131023,

at *4–7, 2023 U.S. Dist. LEXIS 3067, at *10–18. Though Plaintiff has added Defendants to the amended complaint, he has not alleged any new facts material to those causes of action. For the reasons set forth in the Court's previous ruling, these claims are dismissed.

Furthermore, though, as discussed below, Plaintiff has now alleged claims—for violation of his Fourth Amendment right against unreasonable searches—that survive the motions to dismiss, the amended complaint, as with the original complaint, contains no allegations of any municipal policy or custom, *see Monell*, 436 U.S. at 690, widespread practice or unofficial policy, *see Green v. City of New York*, 465 F.3d 65, 80 (2d Cir. 2006), or inadequate training, *see Ambrose v. City of New York*, 623 F. Supp. 2d 454, 465 (S.D.N.Y. 2009), that could provide the basis for a claim for municipal liability. Therefore, Plaintiff's municipal liability claim is dismissed.

Finally, Plaintiff does not allege that his sole surviving claims provide the basis for his conspiracy claim. Rather, Plaintiff premises his conspiracy claim on claims that do not survive the motions to dismiss. (Dkt. No. 36, ¶¶ 91–98.) Accordingly, the Court dismisses Plaintiff's conspiracy claim for failing to plausibly allege an underlying constitutional violation. *See Singer v. Fulton Cnty. Sheriff*, 63 F.3d 110, 119 (2d Cir. 1995); *see also Droz v. McCadden*, 580 F.3d 106, 109 (2d Cir. 2009); *Curley v. Village of Suffern*, 268 F.3d 65, 72 (2d Cir. 2001). To the extent Plaintiff does base his conspiracy claim on a surviving claim, it is wholly conclusory and, as described in this Court's previous ruling, vague and conclusory allegations that defendants have engaged in conspiracy are insufficient to state a plausible claim for conspiracy.

### B.    Unlawful Seizure and Detention

In his eighth cause of action, Plaintiff alleges that Defendants County of Schenectady, Town of Rotterdam, Hobson, Archambault, Florell, Wall, Reyell, Kietlinski, Lee, Simmons, Marinucci, and McFadden "unlawfully and wrongfully seized" Plaintiff, causing his "unlawful

detention" in violation of the Fourth and Fourteenth Amendments. (Dkt. No. 36, ¶¶ 99–102.)
Niskayuna Defendants argue that Plaintiff's allegations related to his unlawful seizure claim are
conclusory and speculative. (Dkt. No. 47-1, at 22.) Rotterdam Defendants similarly argue that
Plaintiff's allegations are conclusory, that any claim for unlawful seizure is subsumed by a claim
for false arrest, and that Defendants' actions fell within well-established exceptions to the
warrant requirement. (Dkt. No. 50-1, at 23–26.) Defendant McFadden argues that Plaintiff fails
to allege any personal involvement by Defendant McFadden. (Dkt. No. 52-3, at 6.)

The Fourth Amendment guarantees "[t]he right of the people to be secure in their
persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const.
amend. IV. This "protects the right of private citizens to be free from unreasonable government
intrusions into areas where they have a legitimate expectation of privacy," *United States v.
Newton*, 369 F.3d 659, 664 (2d Cir. 2004) (citations omitted), and includes freedom from arrest
without probable cause, *see Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996). Arresting officers
have probable cause to arrest when they have "knowledge or reasonably trustworthy information
sufficient to warrant a person of reasonable caution in the belief that an offense has been
committed by the person to be arrested." *See Singer*, 63 F.3d at 119 (quoting *O'Neill v. Town of
Babylon*, 986 F.2d 646, 650 (2d Cir. 1993)). "For circumstances to warrant an investigatory stop,
law enforcement officials must have a 'reasonable basis to think that the person to be detained is
committing or has committed a criminal offense.'" *United States v. Patterson*, 25 F.4th 123, 135
(2d Cir. 2022) (quoting *United States v. Bailey*, 743 F.3d 322, 332 (2d Cir. 2014)).

Plaintiff alleges that he was stopped in his vehicle by Defendants Reyell, Lee, and
Simmons. (Dkt. No. 36, ¶ 35.) Plaintiff alleges that he "did not know the nature of the stop," and
that he was "legally driving his vehicle and not committing any crimes or in the process of such."

(*Id.* ¶ 36.) Plaintiff alleges that he was handcuffed, searched, and placed in the back of an unmarked vehicle by Defendant Reyell and taken to "the stationhouse" by "[a]nother unit." (*Id.* ¶¶ 37–38.) Plaintiff alleges that he was "arrested on drug charges," that his bail was excessive "in light of two minor drug sales," and that he was "coerced to plead guilty in the middle of trial." (*Id.* ¶¶ 42–43, 47). Plaintiff alleges that he pleaded guilty during the trial, was convicted of drug charges, and served two years in state prison. (*Id.* ¶¶ 47, 90.)

To the extent Plaintiff premises his Fourth Amendment claim on the seizure of his person, such a claim is dismissed because it is tantamount to a claim for false arrest, *see Dixon v. City of Syracuse*, 493 F. Supp. 3d 30, 42 (N.D.N.Y. 2020) (dismissing a claim for an unlawful seizure as duplicative of a claim for false arrest where no facts differentiate the claims); *Lozada v. Weilminster*, 92 F. Supp. 3d 76, 98 (E.D.N.Y. 2015) (same), and Plaintiff has neither stated a claim for false arrest nor alleged facts to differentiate the circumstances of his seizure from those of his arrest on charges that led to his conviction. To state a claim for false arrest under § 1983, a plaintiff must plead "that (1) the defendant intended to confine him, (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement[,] and (4) the confinement was not otherwise privileged." *Toussaint v. County of Westchester*, 615 F. Supp. 3d 215, 224 (S.D.N.Y. 2022) (alteration in original) (quoting *Jocks v. Tavernier*, 316 F.3d 128, 134–35 (2d Cir. 2003). But "[t]he existence of probable cause to arrest constitutes justification and 'is a complete defense to an action for false arrest,' whether that action is brought under state law or under § 1983." *Jenkins v. City of New York*, 478 F.3d 76, 84 (2d Cir. 2007) (quoting *Weyant*, 101 F.3d at 852).

"[B]y pleading guilty to the crimes charged resulting from the purportedly false arrest, or to any lesser-included offenses to resolve all of the crimes charged, a plaintiff concedes as a

matter of law that there was probable cause for all charges covered by the plea agreement."
*Seward v. Antonini*, No. 20-cv-9251, 2023 WL 6387180, at *16, 2023 U.S. Dist. LEXIS 177138,
at *40 (S.D.N.Y. Sept. 29, 2023) (alteration in original). Thus, a plaintiff "can under no
circumstances recover" under § 1983 for false arrest if he pleaded guilty to the offense for which
he was arrested. *See Cameron v. Fogarty*, 806 F.2d 380, 387 (2d Cir. 1986); *see also Wahid v.
Mogelnicki*, 406 F. Supp. 3d 247, 249 (E.D.N.Y. 2017).

Here, because Plaintiff alleges that he was arrested on and convicted of drug charges after
pleading guilty, (Dkt. No. 36, ¶¶ 42, 47, 90), and because Plaintiff has alleged no facts to
differentiate the circumstances of his seizure from those of his arrest on charges that led to his
conviction, his claims for false arrest and unlawful seizure must be dismissed. The same
principles also prevent Plaintiff from stating a claim for false imprisonment or malicious
prosecution. *See Cameron*, 806 F.2d at 387.

### C.   Unreasonable Searches

Although Plaintiff does not include a claim for unreasonable search in any of his causes
of action, Plaintiff does allege that he was "subjected to an illegal search," that Defendant
"stripped searched him and conducted an inventory search while in custody all without probable
cause," and that Plaintiff provided a combination code to his apartment after Defendant Simmons
falsely stated that officers had a search warrant. (Dkt. No. 36, ¶¶ 7, 38–40.) Construing these
allegations liberally, the Court interprets the amended complaint as asserting unreasonable search
claims concerning the strip search and the search of Plaintiff's apartment.[5]

---

[5] The Court, however, does not find that Plaintiff has alleged a plausible claim for an unlawful inventory search.
Plaintiff's allegations that he was pulled over, handcuffed, and taken to the police station in the back of a police car
demonstrate objectively that he was seized within the meaning of the Fourth Amendment prior to arriving at the police
station, where he has acknowledged that he was held in custody. *See Mara v. Rilling*, 921 F.3d 48, 70 (2d Cir. 2019).
An "inventory search constitutes a well-defined exception to the warrant requirement," and Plaintiff has not alleged

Rotterdam Defendants similarly construed the amended complaint and argue that Plaintiff's allegations are conclusory and that each search fell within a well-established exception to the warrant requirement. (Dkt. No. 50-1, at 23–26.)

### 1.    Strip Search

A search incident to an arrest "constitutes an exception to the warrant requirement" the Fourth Amendment otherwise imposes. *See Sloley v. VanBramer*, 945 F.3d 30, 37 (2d Cir. 2019) (quoting *Riley v. California*, 573 U.S. 373, 382 (2014)). But "the scope of a search incident to arrest is limited." *Id.* "To determine whether a particular search incident to arrest falls within this exception, '[courts] examine the degree to which [it] intrud[es] upon an individual's privacy and the degree to which [it is] needed for the promotion of legitimate governmental interests.'" *Id.* (second, third, and fourth alterations in original) (quoting *Birchfield v. North Dakota*, 579 U.S. 438, 461 (2016)). The Second Circuit "has held that the 'uniquely intrusive nature of strip searches, as well as the multitude of less invasive investigative techniques available to officers' make it such that a strip search cannot be treated as a routine search of an arrestee's person." *Id.* (quoting *Hartline v. Gallo*, 546 F.3d 95, 102 (2d Cir. 2008)). Therefore, a strip search conducted incident to a misdemeanor arrest requires reasonable suspicion that the arrestee is concealing contraband based on the crime charged, and a visual body cavity search incident to a misdemeanor or felony arrest requires reasonable suspicion that the arrestee is secreting evidence inside the body cavity. *See Sloley*, 945 F.3d at 39; *Hartline*, 546 F.3d at 100. Though the Second Circuit has not decided the issue, district courts within the Second Circuit "have consistently

---

any facts from which the Court could infer that the inventory search while Plaintiff was in custody was unlawful. *See United States v. Mendez*, 315 U.S. 132, 137 (2d Cir. 2002).

held that a reasonable suspicion is required to perform a strip search of a felony arrestee."
*Seward*, 2023 WL 6387180, at *29, 2023 U.S. Dist. LEXIS 177138, at *79–80 (collecting cases).

"Reasonable suspicion" requires more than a "mere hunch," but "the level of suspicion the standard requires is considerably less than proof of wrongdoing by a preponderance of the evidence, and obviously less than is necessary for probable cause." *See Sloley*, 945 F.3d at 43 (quoting *Navarette v. California*, 572 U.S. 393, 397 (2014)). To determine whether an officer had reasonable suspicion, courts "look at the totality of the circumstances." *Id.* at 43 (quoting *United States v. Arvizu*, 534 U.S. 266, 273 (2002)). An arrest for a drug offense does not automatically give rise to a reasonable suspicion to conduct a strip search. *See Seward*, 2023 WL 6387180, at *30, 2023 U.S. Dist. LEXIS 177138, at *81 (collecting cases).

Though Plaintiff alleges that Defendant Simmons conducted the strip search "without probable cause"—a standard more stringent than reasonable suspicion that is not required to justify a strip search incident to felony arrest, *see Sloley*, 945 F.3d at 43—Plaintiff alleges that he had not been committing any crimes when he was pulled over, (Dkt. No. 36, ¶ 36). Plaintiff's later arrest on drug charges does not alone amount to reasonable suspicion justifying a strip search. *See Seward*, 2023 WL 6387180, at *30, 2023 U.S. Dist. LEXIS 177138, at *81; *see also Sarnicola v. County of Westchester*, 229 F. Supp. 2d 259, 273–74 (S.D.N.Y. 2002) ("[A]utomatic justification for strip searches based on an arrest for a drug-related crime would be inconsistent with the legal concept of reasonable suspicion based on the totality of the circumstances . . . ." (citing *United States v. Arvizu*, 534 U.S. 266, 266 (2002))). Thus, the Court declines to dismiss Plaintiff's claim that Defendant Simmons violated Plaintiff's Fourth Amendment rights by conducting a strip search of Plaintiff at the stationhouse.

### 2.      Search of Plaintiff's Residence

Under the Fourth Amendment, warrantless searches are presumed unreasonable. *See Newton*, 369 F.3d at 665. But consent renders a search reasonable. *See United States v. Garcia*, 56 F.3d 418, 422 (2d Cir. 1995). However, consent to search only satisfies the Fourth Amendment where it is voluntarily given, and "[t]he question whether a consent to a search was in fact 'voluntary' or was the product of duress or coercion, express or implied, is a question of fact to be determined from the totality of all the circumstances." *Phillips v. County of Orange*, 894 F. Supp. 2d 345, 370 (S.D.N.Y. 2012) (quoting *Schneckloth v. Bustamonte*, 412 U.S. 218, 227 (1973)).

"To ascertain whether consent is valid, courts examine the 'totality of all the circumstances' to determine whether the consent was 'a product of that individual's free and unconstrained choice, rather than a mere acquiescence in a show of authority.'" *Garcia*, 56 F.3d at 422 (quoting *United States v. Wilson*, 11 F.3d 346, 351 (2d Cir. 1993)). "The standard for evaluating consent is '"objective" reasonableness—what would the typical reasonable person have understood by the exchange between the officer and the suspect?'" *United States v. Munoz*, 987 F. Supp. 2d 438, 444 (S.D.N.Y. 2013) (quoting *Garcia*, 56 F.3d at 423). "Thus, 'the Fourth Amendment is satisfied when, under the circumstances, it is objectively reasonable for the officer to believe that the scope of the [] consent permitted him to conduct the search that was undertaken.'" *Id.* (quoting *Garcia*, 56 F.3d at 423). But where "the police lie to a subject and claim to have a search warrant when they in fact have none, any consent to search is . . . involuntary." *Id.* (citing *Bumper v. North Carolina*, 391 U.S. 543, 549–50 (1968)).

Construing Plaintiff's allegations liberally and drawing all reasonable inferences in Plaintiff's favor, Plaintiff has stated a claim against Defendant Simmons, Florell, and Lee for violation of his Fourth Amendment right against unreasonable searches arising from the search

of his residence. Rotterdam Defendants point out that Plaintiff alleges that Defendants

"knowingly and willfully submitt[ed] false data regarding the transactions that led to Plaintiff's

arrest such as the search warrant and witness statements." (Dkt. No. 50-1, at 25 (quoting Dkt.

No. 36, ¶ 104).) Rotterdam Defendants argue that this is an admission that there was a search

warrant for Plaintiff's apartment. (*Id.*) However, the amended complaint refers to other seizures,

including seizure of a 2016 Mercedes Benz, (Dkt. No. 36, ¶¶ 41–42), and the amended complaint

does not identify the subject of "the search warrant" alleged to include "false data," (*id.* ¶ 104).

Thus, liberally construing Plaintiff's allegations and drawing all reasonable inferences in favor of

Plaintiff, the Court infers that there was no search warrant for Plaintiff's residence when

Defendant Simmons asked for the combination code.

Plaintiff alleges that Defendant Simmons asked Plaintiff for the "combination code entry

to his apartment" and told Plaintiff "the police were at his residence with a search warrant" and

"that if he doesn't give it to him they would only break open the door, causin[g] excessive

damage to his home." (*Id.* ¶ 39.) Plaintiff alleges that as a result, he gave "defendant officers

access to his apartment," but later learned that "there wasn't any search . . . warrant." (*Id.* ¶¶ 40.)

Plaintiff alleges that Defendants Florell and Lee searched the residence and seized various

possessions. (*Id.* ¶ 41.)[6]

---

[6] Plaintiff alleged that "the Town of Niskayuna, Town of Rotterdam and its officer [sic] acting in concert with Reyell, Florell and Lee" seized items in the search, (*id.*), but this allegation is too vague to find that Plaintiff has plausibly alleged the personal involvement of any of the other individual moving Defendants, *see Grullon v. City of New Haven*, 720 F.3d 133, 138 (2d Cir. 2013). Plaintiff appears to be attempting to bring a Fourth Amendment claim against Defendants Town of Niskayuna and Town of Rotterdam. Plaintiff has also included government-entity Defendants in several of his other non-*Monell* claims. (Dkt. No. 36, ¶¶ 64–82, 91–102.) But "*Monell* expressly prohibits *respondeat superior* liability for municipalities" and Plaintiff has not plausibly alleged that any individual Defendant "is someone 'whose edicts or acts may fairly be said to represent official policy'" for any of the government-entity Defendants. S*ee Agosto v. N.Y.C. Dep't of Educ.*, 982 F.3d 86, 97–98 (2d Cir. 2020) (quoting *Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 694 (1978)). Thus, Plaintiff has failed to state any non-*Monell* claims against government-entity Defendants. *See id.* at 100–01; *Byrd v. Town of DeWitt*, No. 23-cv-390, 2023 WL 6467921, at *13, 2023 U.S. Dist. LEXIS 179478, at *31–32 (N.D.N.Y. Oct. 5, 2023). Accordingly, Plaintiff's non-*Monell* claims against government Defendants are dismissed.

Niskayuna Defendants and Rotterdam Defendants argue that Plaintiff consented to the

search of his residence by giving officers access. (Dkt. No. 47-1, at 22; Dkt. No. 50-1, at 25.) But

these Defendants fail to address Plaintiff's allegation that Defendant Simmons lied to Plaintiff in

order to get Plaintiff's consent to search the residence, (Dkt. No. 36, ¶¶ 39–40). Because consent

to search satisfies the Fourth Amendment only where that consent is voluntary, *see Phillips*, 894

F. Supp. 2d at 370, and because consent to search is involuntary where police lie in claiming that

they have a search warrant, *see Munoz*, 987 F. Supp. 2d at 444, Plaintiff has plausibly alleged

that Defendants Simmons, Florell, and Lee violated Plaintiff's Fourth Amendment right by

searching his residence without a search warrant.[7]

## D.     Right to Counsel

Plaintiff asserts, without any specific factual allegations and without indicating against

whom the claim is asserted, that Defendants violated his right to counsel. (Dkt. No. 36, at 10.)[8]

Plaintiff has not alleged that he did not have the assistance of counsel during his criminal

prosecution; rather, Plaintiff alleges that he "could not afford a lawyer of his own choosing, only

a lawyer that was convenient" and that he later hired Defendants Marinucci and McFadden. (Dkt.

No. 36, ¶¶ 43, 45.) Defendant McFadden argues that Plaintiff cannot state such a claim because

Plaintiff was represented by counsel. (Dkt. No. 52-3, at 10.) Niskayuna Defendants and

---

[7] As discussed below, Rotterdam Defendants argue that other claims are barred by *Heck v. Humphrey*, 512 U.S. 477 (1994), (Dkt. No. 50-1, at 19–21), but they do not argue that Plaintiff's Fourth Amendment unreasonable search claims are so barred. In any event, based on the amended complaint, it does not appear that *Heck* bars Plaintiff's Fourth Amendment unreasonable search claims because Plaintiff alleges that, "[n]o drugs or paraphernalia w[ere] found in [Plaintiff's] apartment," he refers to "two minor drug sales," and he was "convicted of drug charges." (Dkt. No. 36, ¶¶ 41, 90.) It does not appear, therefore, that Plaintiff's Fourth amendment unreasonable search claims necessarily imply the invalidity of his conviction. *See Walker v. Johns*, No. 16-cv-437, 2016 WL 4508358, at *4, 2016 U.S. Dist. LEXIS 115204, at *8–9 (N.D.N.Y. Aug. 29, 2016) ("[W]here the Section 1983 action even if successful will not demonstrate that invalidity of any outstanding criminal judgment or prison disciplinary determination against the plaintiff, a court should allow the action to proceed.").

[8] The Court also construes Plaintiff's tenth claim as asserting a violation of his Sixth Amendment right to counsel. (*Id.* at 11.)

Rotterdam Defendants argue that by failing to allege any supporting facts whatsoever, Plaintiff has failed to plausibly allege such a claim. (Dkt. No. 47-1, at 12; Dkt. No. 50-1, at 18–19.)

The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence." U.S. Const. amend. VI. The right to counsel attaches upon "the initiation of adversary judicial criminal proceedings" against the defendant and applies to all "critical stages" of the prosecution before, during, and after trial. *See Miller v. O'Bryan*, 498 F. Supp. 2d 548, 557 (N.D.N.Y. 2007) (quoting *United States v. Gouveia*, 467 U.S. 180, 189 (1984)).

As a preliminary matter, the Court notes that, to the extent Plaintiff asserts this claim against Defendant McFadden, such a claim is dismissed because Plaintiff has not plausibly alleged that he was a state actor as is required under § 1983. *Cf. Rodriguez v. Weprin*, 116 F.3d 62, 65–66 (2d Cir. 1997) ("[I]t is well-established that court-appointed attorneys performing a lawyer's traditional functions as counsel to defendant do not act 'under color of state law' and therefore are not subject to suit under 42 U.S.C. § 1983"). And it is equally well-settled that "the 'personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.'" *Victory v. Pataki*, 814 F.3d 47, 67 (2d Cir. 2016) (quoting *Farrell v. Burke*, 449 F.3d 470, 484 (2d Cir. 2006)). That is, to establish a defendant's individual liability in a suit brought under § 1983, a plaintiff must show "the defendant's personal involvement in the alleged constitutional deprivation." *Grullon*, 720 F.3d at 138 (citations omitted). To do so, a plaintiff must "allege a tangible connection between the acts of a defendant and the injuries suffered." *Bass v. Jackson*, 790 F.2d 260, 263 (2d Cir. 1986).

Here, Plaintiff has not plausibly alleged the personal involvement of any Defendant in any alleged violation of his right to counsel. To the extent Plaintiff premises this claim on an

inability to "afford a lawyer of his own choosing" because "his bank account was frozen," (Dkt. No. 36, ¶¶ 43, 60), Plaintiff acknowledged having later hired two attorneys—Defendants McFadden and Marinucci—to represent him. (*Id.* ¶ 45.) And Plaintiff's failure to allege, beyond conclusory allegations, the personal involvement of any Defendant or facts from which the Court could infer that any bank account seizure was purposeful and unjustified requires dismissal of his claim. *Cf. United States v. Kolfage*, 537 F. Supp. 3d 559, 565 (S.D.N.Y. 2021). Thus, Plaintiff's claim for denial of his right to counsel is dismissed.

### E.      Right to a Fair Trial

The Court construes Plaintiffs ninth claim, which Plaintiff alleges arise under the Fifth and Fourteenth Amendments, as a claim for violation of Plaintiff's right to a fair trial.[9] Specifically, Plaintiff appears to allege claims for *Brady* violations, fabrication of evidence, and provision of false testimony. (Dkt. No. 36, ¶¶ 5, 7, 96–98, 103–07.) Plaintiff does not state against whom these claims are asserted. (*Id.* ¶¶ 103–07.) Niskayuna Defendants and City of Schenectady Defendants argue that Plaintiff's allegations in support of these claims are too vague and nonspecific to state a claim and that Plaintiff fails to allege the personal involvement of any Niskayuna Defendant. (Dkt. No. 47-1, at 13, 26–27; Dkt. No. 48-1, at 13–14.) Rotterdam Defendants argue that these claims are barred by *Heck v. Humphrey*. (Dkt. No. 50-1, at 19–21.)[10]

---

[9] Additionally, though the Court dismissed Plaintiff's conspiracy claim for the reasons stated in its prior decision, *see supra* section IV.A, the Court construes Plaintiff's sixth claim, which Plaintiff refers to as a "conspiracy to convict" claim, as alleging violations of Plaintiff's right to a fair trial, (Dkt. No. 36, ¶¶ 95–98), which the Court addresses here in connection with Plaintiff's ninth claim.

[10] "Where a plaintiff brings a Section 1983 claim and 'a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence . . . the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated.'" *Beckwith v. City of Syracuse*, 642 F. Supp. 3d 283, 291 (N.D.N.Y. 2022) (quoting *Heck*, 512 U.S. at 487). However, because the Court disposes of these claims on other grounds, the Court need not address this issue.

Defendant McFadden argues that Plaintiff has failed to allege personal involvement of Defendant McFadden and that Plaintiff otherwise fails to state a claim. (Dkt. No. 52-3, at 10.)

### 1.      Brady Violation

Plaintiff alleges that "the defendant . . . failed to timely disclose 'BRADY' material to plaintiff's defense [] counsel" and that "the defendants knowingly, willfully and wrongfully concealed information that would have assisted plaintiff in his defense against serious criminal charges." (Dkt. No. 36, ¶¶ 98, 106.)

*Brady* violations[11] are actionable under 42 U.S.C. § 1983. *See Poventud v. City of New York,* 750 F.3d 121, 132 n.12 (2d Cir. 2014) (en banc). Stating a *Brady* violation requires the pleading of three elements: "The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued." *United States v. Rivas*, 377 F.3d 195, 199 (2d Cir. 2004)

Plaintiff does not allege what information was not disclosed, let alone that it constitutes exculpatory or impeachment evidence. *See Rivas*, 377 F.3d at 199. Nor has Plaintiff alleged the personal involvement of any Defendant. Thus, Plaintiff has failed to plausibly allege a claim under § 1983 for a *Brady* violation. *See Myers v. County of Nassau*, 825 F. Supp. 2d 359, 368 (E.D.N.Y. 2011) (dismissing a *Brady* claim under § 1983 where the Plaintiff "set forth no facts supporting any such theory").

---

[11] *See Brady v. Maryland*, 373 U.S. 83 (1963). Under *Brady*, "[t]he government has the obligation to turn over evidence in its possession that is both favorable to the accused and material to guilt or punishment." *Pennsylvania v. Ritchie*, 480 U.S. 39, 57 (1987).

## 2.  Fabrication of Evidence and False Testimony

Plaintiff alleges that Defendants "knowingly and willfully submitt[ed] false data regarding the transactions that led to Plaintiff's arrest such as the search warrant and witness statements . . . [and] . . . uttered false testimony during plaintiff's prosecution as well as trial that led to him being indicted and convicted on narcotics sale charges." (Dkt. No. 36, ¶¶ 104–05.)[12]

"It is firmly established that a constitutional right exists not to be deprived of liberty on the basis of false evidence fabricated by a government officer." *Buari v. City of New York*, 530 F. Supp. 3d 356, 389 (S.D.N.Y. 2021) (quoting *Harris v. City of New York*, 222 F. Supp. 3d 341, 351 (S.D.N.Y. 2016)). "When a police officer creates false information likely to influence a jury's decision and forwards that information to prosecutors, he violates the accused's constitutional right to a fair trial, and the harm occasioned by such unconscionable action is redressable in an action for damages under 42 U.S.C. § 1983." *Ricciuti v. N.Y.C. Transit Auth.*, 124 F.3d 123, 130 (2d Cir. 1997). The elements of a claim for denial of the right to a fair trial due to fabrication of evidence are: "(1) [an] investigating official (2) fabricates information (3) that is likely to influence a jury's verdict, (4) forwards that information to prosecutors, and (5) the plaintiff suffers a deprivation of life, liberty, or property as a result." *Garnett v.*

---

[12] Construed liberally, Plaintiff's allegation of fabricated evidence used to apply for a search warrant could suggest Plaintiff has asserted a claim for malicious prosecution. *See Bailey v. City of New York*, 79 F. Supp. 3d 424, 447 (E.D.N.Y. 2015). To state a claim for malicious prosecution, a plaintiff must plausibly allege "'(1) the initiation or continuation of a criminal proceeding against plaintiff; (2) termination of the proceeding in plaintiff's favor; (3) lack of probable cause for commencing the proceeding; and (4) actual malice as a motivation for defendant's actions.'" *See Manganiello v. City of New York*, 612 F.3d 149, 161 (2d Cir. 2010) (quoting *Murphy v. Lynn*, 118 F.3d 938, 947 (2d Cir. 1997)). As discussed above, a proceeding that terminates in a conviction precludes a claim of malicious prosecution. *See Thompson v. Clark*, 596 U.S. 36, 39 (2022) ("To demonstrate a favorable termination of a criminal prosecution for purposes of the Fourth Amendment claim under § 1983 for malicious prosecution, a plaintiff need only show that his prosecution ended without a conviction."); *see also Barnes v. City of New York*, 68 F.4th 123, 128 (2d Cir. 2023) ("We accordingly affirm the dismissal of [Plaintiff]'s malicious prosecution claim because he cannot show that his 'criminal prosecution ended without a conviction.'" (quoting *Thompson*, 596 U.S. at 39)). Here, Plaintiff concedes that he was convicted of drug offenses and served two years in state prison. (Dkt. No. 36, ¶¶ 47, 90.) Thus, Plaintiff has not shown that the proceeding terminated in his favor, and therefore, to the extent Plaintiff asserts a claim for malicious prosecution, that claim is dismissed.

*Undercover Officer C0039*, 838 F.3d 265, 279 (2d Cir. 2016) (citing *Ricciuti*, 124 F.3d at 130).

However, law enforcement witnesses at grand jury proceedings and at trial, as with other

witnesses, are absolutely immune from § 1983 claims arising from their testimony. *See Rehberg*

*v. Paulk*, 566 U.S. 356, 367 (2012) (citing *Briscoe v. LaHue*, 460 U.S. 325, 332–33 (1983)).

To the extent Plaintiff's claims are based on allegedly false testimony, such claims are

dismissed because witnesses are afforded absolutely immunity from § 1983 claims arising from

their testimony at grand jury proceedings or at trial. *See Rehberg*, 566 U.S. at 367. To the extent

Plaintiff's claims are based on allegedly fabricated evidence presented during his prosecution,

such claims are dismissed because Plaintiff has not alleged the existence of any specific

fabricated information that was either likely to influence a jury's verdict or forwarded to a

prosecutor, let alone that any Defendant was personally involved in any such fabrication. *See*

*Garnett*, 838 F.3d at 279. Indeed, the only allegation that can be construed as alleging the

fabrication of specific information by a specific Defendant is that Defendant Kietlinski "failed to

produce the necessary paperwork or falsified the paperwork to make it appear that [Plaintiff's]

car was abandoned rather than stolen." (Dkt. No. 36, ¶ 58.) But Plaintiff does not allege that

paperwork related to his allegedly stolen vehicle was provided to prosecutors in relation to his

criminal prosecution, that such information was likely to influence a jury's verdict, or that such

information was relevant to his criminal prosecution at all. Rather, Plaintiff appears to point to

that allegation in support of his claims for denial of access to the courts and failure to investigate,

both of which the Court dismissed and neither of which is factually related to Plaintiff's criminal

prosecution. Thus, Plaintiff has failed to plausibly allege a claim under § 1983 for fabrication of

evidence. Accordingly, Plaintiff's ninth and tenth claims, arising under the Fifth, Sixth, and Fourteenth Amendments, are dismissed.[13]

### F.   Qualified Immunity

Niskayuna Defendants, of whom Defendant Florell remains, and Rotterdam Defendants, of whom Defendants Lee and Simmons remain, argue that they are entitled to qualified immunity. (Dkt. No. 47-1, at 24–26; Dkt. No. 71, at 12–13.) But a ruling on qualified immunity on this record would be premature, and the Court declines to address qualified immunity here. *See, e.g., Chamberlain ex rel. Chamberlain v. City of White Plains*, 960 F.3d 100, 111 (2d Cir. 2020) ("[A]dvancing qualified immunity as grounds for a motion to dismiss is almost always a procedural mismatch."). Accordingly, Niskayuna Defendants' and Rotterdam Defendants' motions to dismiss based on qualified immunity are denied, and Defendants may renew this argument at a subsequent stage.

### G.   Temporary Restraining Order

In addition to compensatory and punitive damages, Plaintiff seeks "[i]njunctive relief in the form of a Temporary Restraining Order (TRO), to prevent these defendants from harassing, intimidating, retaliating and threatening plaintiff during this suit." (Dkt. No. 136 at 11.) Niskayuna Defendants appear to construe Plaintiff's request as a motion for a temporary restraining order and cite caselaw based on motions under Federal Rule of Civil Procedure 65. (Dkt. No. 47-1, at 27–28.) But Plaintiff has not moved for a temporary restraining order or a

---

[13] Niskayuna Defendants also argue that the amended complaint must be dismissed because it violates Federal Rule of Civil Procedure 8. (Dkt. No. 47-1, at 11–14.) Rule 8(a) requires that a pleading contain: "(1) a short and plain statement of the grounds for the court's jurisdiction . . . ; [](2) a short and plain statement of the claim showing that the pleader is entitled to relief; and [](3) a demand for the relief sought, which may include relief in the alternative or different types of relief." The purpose of Rule 8(a) is to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *See Twombly*, 550 U.S. at 555 (alteration in original) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). Because the Court disposes of all but one of Plaintiff's claims on Rule 12(b)(6) grounds and finds that Plaintiff's surviving Fourth Amendment unreasonable search claim does not run afoul of Rule 8, the Court need not address Niskayuna Defendants' Rule 8 argument further.

preliminary injunction under Rule 65; rather, Plaintiff seeks injunctive relief as a remedy. (Dkt. No. 36, at 11.) Because there is not a motion for a temporary restraining order pending, the Court need not address the issue at this point.

## V.     CONCLUSION

For these reasons, it is hereby

ORDERED that City of Schenectady Defendants' and Rotterdam Defendants' requests to consider their motions unopposed, (Dkt. Nos. 61, 62), are **DENIED**; and it is further

ORDERED that Defendants Town of Niskayuna, Hobson, Archambault, Florell, and Wall's motion to dismiss, (Dkt. No. 47), is **GRANTED in part** and **DENIED in part**; and it is further

ORDERED that Defendants City of Schenectady and Kietlinski's motion to dismiss, (Dkt. No. 48), is **GRANTED**; and it is further

ORDERED that Defendants Town of Rotterdam, Lee, and Simmons's motion to dismiss, (Dkt. No. 50), is **GRANTED in part** and **DENIED in part**; and it is further

ORDERED that Defendant McFadden's motion to dismiss, (Dkt. No. 52), is **GRANTED**; and it is further

ORDERED that the following claims alleging violations of Plaintiff's Fourth Amendment right against unreasonable searches may proceed: (1) his claim arising from the strip search against Defendant Simmons, and (2) his claim arising from the search of his residence against Defendants Simmons, Florell, and Lee; and it is further

ORDERED that all other claims which are the subject of Defendants' motions are **DISMISSED**; and it is further

ORDERED that all Defendants other than Defendants County of Schenectady, Simmons, Reyell, Florell, Lee, and Marinucci be terminated as parties to this action; and it is further

**ORDERED** that Plaintiff must file proof of service of the amended complaint on

Defendants Eric Reyell, County of Schenectady, and David Marinucci by December 26, 2023.

**IT IS SO ORDERED.**

Dated: <u>December 11, 2023</u>
      Syracuse, New York

Brenda K. Sannes
Chief U.S. District Judge